In the Court of Common Pleas of Paulding County, Ohio.
DELTA P. COTTRELL v. THE BOARD OF COUNTY COMMISSIONERS OF PAULDING COUNTY, OHIO, ET AL.*

In the Court of Common Pleas of Williams County.
DANIEL W. SPEALMAN ET AL v. THE BOARD OF COUNTY COMMIS-SIONERS OF WILLIAMS COUNTY,

In the Court of Common Pleas of Williams County.
BLINN PECK ET AL v. THE BOARD OF COUNTY COMMISSIONERS OF WILLIAMS COUNTY, OHIO, ET AL.

In the Court of Common Pleas of Williams County.
IN RE PETITION OF WILLIAMS COUNTY COMMISSIONERS FOR DITCH IMPROVEMENT No. 345.

Decided, July 30, 1921.

1. The act passed June 19, 1919, entitled, "An act to codify, consolidate, and clarify the ditch laws of the state, etc.," 108 O. L., 926, is un-constitutional, being in contravention of article one, section nine-teen, for the following reasons:

a. It authorizes the taking of private property without reference to the public welfare, and without any determination that the public welfare requires it.

b. It authorizes the taking of private property for a ditch without first making compensation for the land taken.

c. It authorizes a deduction from the compensation for the benefits to the property to be taken by assessing on the land benefitted the compensation and damages paid, thereby reducing the compen-sation by the amount so levied.

* The case of Cottrell vs Commissioners was taken to the court of ap-peals of Paulding county, where the proceedings were dismissed for defects in perfecting the record, and the judgment of the com-mon pleas court was affirmed.

The court of appeals of Williams county heard the case of Gear-hart vs Commissioners, which was a case similar to the case of Peck vs Commissioners, mentioned above, and affirmed the judg-ment of the common pleas court without opinion on January 25, 1922.

d.  It authorizes the assessing of the costs of the litigation in determining the amount of compensation and damages sustained by any tract of land on the land benefitted, thereby reducing the compensation by the amount of the costs so assessed.

e.  It authorizes the assessing on the land benefitted the costs adjudged against the county in any litigation growing out of the ditch proceeding, without determining that such litigation was for the benefit of those assessed.

f.  In so far as it provides for the assessing of the cost of cleaning a ditch in proportion to the cost of the original construction thereof, it is unconstitutional in that it attempts to levy assessments not according to the benefits to be derived.

2.  Said act provides for an appeal from the judgment of the court of common pleas to an official board of appeals composed of the superintendent of public works, the state highway commissioner, and the dean of the engineering department of the Ohio State University, and is in contravention of article four, section one, and of article four, section ten, of the Constitution in that it attempts to confer judicial power upon administrative officers not elected by the people.

3.  This act is in contravention of section sixteen, article one of the Constitution of Ohio, and the Fourteenth Amendment to the Constitution of the United States, in that in a ditch proceedings filed by the board of county commissioners in the court of common pleas, it attempts to place upon the petitioners for the ditch, the board of county commissioners, the power to determine controversies as to the amount of assessments; that is, it gives to the party asking for the ditch improvement the power to determine the amount to be paid by way of assessments for the construction of the improvement by other parties, thereby determining the amount to be paid in its own case.

4.  The ditch law enacted June 19, 1919, being unconstitutional, the repealing clause thereof is a nullity, and the ditch laws attempted to be repealed thereby are in force.

5.  No facts showing an estoppel being found, the act passed April 29, 1921, in so far as it attempts to make valid the acts under the unconstitutional act of June 19, 1919, is without effect.

6.  On appeal from an order made by the board of county commissioners granting a ditch, the board of county commissioners is not a proper party in the court to which the appeal is taken.

7.  The construction of branches to a ditch, which branches are not mentioned in the petition, and were not granted by the board of county commissioners, and of which the course and termini were

not determined, no finding having been made by said board that the branches are necessary or will be conducive to the public welfare will be enjoined; and the assessments levied threrefor will be enjoined.

8. On a petition being filed to deepen a ditch, the board of county commissioners is without power to locate as a branch thereof a new ditch in a water course through which no ditch had theretofore been located or constructed.

9. The assessments levied for a ditch must not exceed the cost thereof, and the board of county commissioners is without authority to levy assessments for the estimated cost of the ditch when the estimated cost of the ditch exceeds the amount for which the ditch sold, and the collection of the excess will be enjoined.

10. Assessments can be levied only for benefits. Land that lies so high that the flow of the water from the land is not accelerated by the ditch improvement can not be assessed; land from which the flow of water is accelerated by the ditch improvement may be assessed; if a ditch improvement takes the water away quicker or prevents the water from rising so high, then the land may be benefitted by such improvement back to the point up the course of the water flowing to the improvement where a profile of a ditch, with sufficient fall to cause the water to flow to the surface of the high water before the improvement, intersects the bottom of a ditch deep enough to drain the land at that point.

11. The outer limit of benefits to land to be assessed for the improvement of a ditch is the irregular line connecting the points back from the ditch which have sufficient elevation above the high water before the improvement is made so that a profile of a ditch from any of these points will have a sufficient gradient for the flow of the water from that point to the high water level of the improvement where the drainage from the point enters the improvement. Land above that point can not be lawfully assessed; land below that point may be benefitted inversely to its elevation above the bottom of the proposed improvement at the place where its drainage enters the improvement.

*Snook & Wilcox,* and *S. W. Ennis,* Attorneys for Delta P. Cottrell.

*Mervin Day,* Prosecuting Attorney for Paulding County, Ohio, and *Wilson H. Snook,* Attorneys for The Board of County Commissioners of Paulding County, Ohio, et al.

*Charles E. Scott,* Attorney for Daniel W. Spealman.

*Howe H. Demuth,* Prosecuting Attorney for Williams County, Ohio, Attorney for The Board of County Commissioners of Williams County, Ohio.

*Elwin C. Peck,* Attorney for Blinn Peck, et al.

*Augustus L. Gebhard,* Attorney for certain land owners in case No. 7755.

*Robert P. Hays* and *I. W. Pressler,* Attorneys for land owners in case No. 7744.

fitted by such improvement back to the point up the court of the

NEWCOMER, J.

These four cases were heard and submitted at different times Each of the cases raises the quetion of the constitutionality of the ditch law enacted in 1919, 108 O. L., 926; each presents different questions, but all of them present the question of the constitutionality of the ditch law upon different facts in different procedure.

The Legislature of Ohio in 1917 passed a law (107 O. L., 611) providing for the appointment of a commission to codify the ditch laws, and provided that a county surveyor, a farmer, and a lawyer should be appointed. The governor appointed as the members of the commission a county surveyor, a farmer who had had experience as a county commissioner, and W. F. Corbett, of Paulding, a lawyer. This commission, using the single county ditch law as the basis of its draft, prepared a codification of the ditch laws. W. F. Corbett was elected judge of the court of common pleas of Paulding county in November, 1918, and resigned as a member of this commission before the Legislature met to pass upon the codification of the ditch law so prepared. Thereupon the governor appointed another member of the commission. The new commission proceeded to make a new draft of the ditch law, and presented their report to the Legislature in 1919. The new law, following the report, is entitled, among other things, An Act to Codify and Clarify the Ditch Laws of the State, and may be found in 108 O. L., 926.

In the case of *Cottrell* v. *Commissioners* the petition avers that a petition was filed with the county auditor praying for the clean-

ing, deepening and widening of a ditch; that the commissioners
found in favor of said proposed improvement, ordered the same
constructed, and proposed to assess the land of the plaintiff for
a part of the costs of constructing the same; that there was no
finding by the board of any public necessity for the improvement
or that the improvement would be conducive to the public wel-
fare; that the ditch crosses the plaintiff's land, and his land will
be damaged by reason thereof, and that all the acts of the com-
missioners were done under the ditch law aforesaid. The com-
missioners and the auditor filed an answer in which they admit
that the commissioners are about to construct a ditch and assess
the land of the plaintiff for a part of the cost thereof; that all
proceedings were had under the ditch law aforesaid; that the
ditch crosses the plaintiff's land, and that a part of the plaintiff's
land will be appropriated for the ditch and that compensation
therefor will be determined within ninety days after the ditch
is completed, and the amount so determined will be assessed with
other costs on the lands benefitted including plaintiff's land,
all pursuant to the provisions of the ditch law aforesaid.

A general demurrer to the answer is filed, which raises the
question of the constitutionality of the ditch law. The ditch
proceedings have not been completed. No contracts have been
let. The court is asked to restrain the commissioners, the auditor
and the treasurer from proceeding further.

In the case of *Spealman* v. *Commissioners,* the ditch proceed-
ing progressed to its final determination before the board of
county commissioners. The contracts for the construction of
the ditch were let, and the assessments were levied, prior to the
bringing of the action. No part of the ditch was constructed
save a very small part at the lower end, not on plaintiffs' land.

The petition avers that proceedings of the commissioners were
irregular in the location of said ditch, and in levying assess-
ments; that the ditch law aforesaid is unconstitutional, and that
all of the acts of the officers were had under said law. An answer
was filed and the case was heard on the pleadings and the evi-
dence. The evidence shows that the petition is a petition for
the cleaning out of a ditch and for the deepening of a ditch if

necessary; that three branches were attempted to be located which are as long or longer than the main ditch, and that there is no finding by the commissioners that the branches, or any of them, are necessary or that they will be conducive to the public welfare; and the evidence shows that one of said branches is located where no ditch had theretofore been located; that branch one of said ditch is located across the land of part of the plaintiffs; that said ditch sold for $296.33 less than the estimated cost thereof, and the $296.33 was not deducted in spreading the assessments, and that assessments were levied to collect $296.33 more than the total cost of said ditch, part of which are levied on plaintiff's land; and the evidence shows that the entire land within the watershed was assessed, that the high land as well as the low land was assessed without reference to whether or not the high land needed the proposed improvement to drain it, and that the assessments were levied on the theory that all of the land within the watershed, without regard to its elevation, should be assessed.

In the case of *Peck* v. *Commissioners*, a ditch petition was filed praying for the cleaning and deepening of a county ditch. Proceedings were had on the petition before the county commissioners and upon the hearing, the county commissioners found in favor of the proposed improvement. Blinn Peck, and others filed an appeal bond and the matter was appealed to this court and submitted on the pleadings and evidence. The evidence shows that the land of the appellants is upland, and has adequate outlet to drain the same without any work being done on the proposed improvement. The appellants claim that they are not proper parties to this ditch proceeding by reason thereof. The appellants claim that the ditch proceedings are void by reason of the fact that the statute is unconstitutional. The petitioner for this ditch does not have adequate drainage. The evidence shows that the upper part of this ditch has a fall of six inches to the hundred feet, and that the entire ditch has much more fall than is needed for drainage. The appellants claim that the assessments were made in zones according to the acres drained, and without regard to the actual

benefits. The board of county commissioners filed an answer in which they admit that in levying the assessments, the enginee in levying the same and the commissioners in approving the same levied the assessments in zones; that the first zone so called was assessed at a certain percentage; that the next zone was assessed at a certain but less percentage, and so on back. The evidence shows that the assessments were made with reference to the watershed theory, that is with reference to the acres drained into the ditch, and not with reference to the land that needs drainage by the proposed improvement; and shows that the land of the plaintiffs will not be benefitted by the construction of the proposed improvement.

In the case of *In Re County Ditch Improvement, No.* 345, the board of county commissioners of Williams county, filed a petition in this court praying for the deepening of a ditch to drain a swamp across which a public highway is constructed. The water overflows the highway. The outlet of the swamp is through a clay ridge. The engineer was ordered to make a survey and an estimate of the costs of the improvement and an estimate of the lands benefitted. The evidence shows that the engineer in his report assesses the entire acreage within the watershed, the highland as well as the lowland; the evidence shows that the upland will not be benefitted by the construction of the proposed improvement, and that the lowland will be benefitted. All four of these ditch proceedings are brought under the ditch law found in 108 O. L., 926, General Code, Sections 6442 *et seq.*

Proceedings to locate, construct, deepen or widen a ditch are proceedings to take private property. The construction of the ditch is the taking of private property for the bed of the ditch and for the placing of the dirt on the bank thereof, and for the going upon the land to construct the ditch. The levying of the assessments is also the taking of private property to pay for the ditch. This can be done only for a public purpose, and only when it will be for the public welfare. This can not be done for a private purpose and can not be done if the public welfare does not require it. Before this property can be taken, some person, board, or tribunal must first determine that the taking of this

property is a taking for a public purpose and will be conducive to the public welfare.

Article one, section nineteen, of the Constitution of Ohio, specifically guarantees this right. The ditch law aforesaid does not provide for any board or tribunal to first determine that the ditch will be conducive to the public welfare before taking private property to locate and construct the ditch. Section 6443 provides for the petition, but does not state that the petition should aver that the public necessity or welfare requires the ditch. Section 5452 provides for procedure if the finding is in favor of the ditch, but nothing is therein contained providing that any one must find that it is conducive to the public welfare. Section 6453 provides for the dismissal of the petition upon certain conditions and one condition mentioned is that the petition shall be dismissed if the improvement will not be conducive to t' public welfare, but there is no statement in this act that the commissioners must make this positive finding. In Section 6469 appears a provision that if the commissioners find that the ditch is conducive to the public welfare then they may pay out of the county funds not more than ten per cent. of the total cost of the ditch. This section seems to infer that they may find for the ditch without finding that it will benefit the public welfare, and seems to infer that ditches can be constructed without the county paying any part of the cost, whereas ditches, that take the property of others, can only be constructed when conducive to the public welfare, and that part of the cost of construction of every ditch which benefits the general public must be paid for by the public funds out of the public treasury; so that in any ditch, the public welfare must be served before the ditch can be granted, and if the ditch serves the public welfare, the public should pay a part of its cost.

Section 6485 relating to certain proceedings in an action to recover assessments or to enjoin assessments, provides that the court may allow evidence as to whether or not the proposed improvement will be conducive to the public welfare. If the sections relating to the granting of the ditch provided for such finding and there was some irregularity in the finding, then

this section might apply, but where the section granting the commissioners jurisdiction to act does not contain the provision, this defect is not cured by other sections relating to actions brought to enjoin the assessments. Section 6488, relating to the abandonment of ditches, recognizes that the commissioners must first find that the public welfare will be served if the ditch be abandoned, but this section applies only to the abandonment of ditches. Section 6520 of the act provides for a finding before a joint board of commissioners, and nothing is therein contained requiring that a joint board first find that the proposed improvement will be conducive to the public welfare.

Article 1, section 19 of the Constitution of Ohio provides that "private property shall ever be held inviolate but subservient to the public welfare." This ditch law authorizes the taking of private property for private purposes; and does not require that a determination be first made that the purpose for which the property is taken is for the public welfare, and by reason thereof this act is unconstitutional.

*Edwards* v. *Myers*, 99 O. S., 96; *Reeves* v. *Treasurer*, 8 O. S., 333; *Taylor* v. *Crawford*, 72 O. S., 560; *McQuillen* v. *Hatton*, 42 O. S., 202; *Sessions* v. *Crunkilton*, 20 O. S., 349; *Kasch* v. *City of Akron*, 100 O. S., 229.

In the opinion in the case of *Kasch* 'v. *City of Akron*, 100 O. S., 229, Donahue, Judge, says:

"This court held in the case of *Reeves* v. *Treasurer of Wood County et al*, 8 Ohio St., 333, that a statute authorizing township trustees to establish, locate or improve a watercourse without requiring them to first determine that such improvement would be conducive to the public health, convenience, or welfare was unconstitutional and void, for the reason that it placed no limit to official discretion, and the power thereby conferred could be exercised irrespective of the public welfare, without violation of any provisions of that act. A like conclusion was reached in the case of *McQuillen* v. *Hatton,* 42 Ohio St., 202. In the case of *Chicago & Erie Rd. Co.* v. *Keith et al*, 67 Ohio St., 279, Sections 3343, 3344, 3345 and 3346, Revised Statutes, relating to regulation of ditches along railroad rights of way, were held unconstitutional because they did not contemplate the exercise of such power for the protection of public health,

convenience, or welfare, but solely to the advantage of private interests.

"In the case of *Edwards et al* v. *Myers,* 99 Ohio St., 96, Section 6889, General Code, was for the same reason declared to be unconstitutional.

,"If a statute is unconstitutional because it contains no provision, requiring that the public character of the improvement shall first be determined before an improvement such as is here proposed to be made is ordered, it follows that this provision, necessary to the constitutionality of the act, is not merely directory, but a condition precedent to the power of public officers to cause such improvement to be made."

As property can be taken only when conducive to the public welfare, and this is the foundation of the right to take property to construct ditches, and this right is not granted in the act, the entire act is fatally defective. All the other provisions of the act depend upon this unconstitutional provision to take property. The entire act being defective, the repealing clause of the act, repealing the former ditch laws, is likewise defective, and the former ditch laws which were attempted to be repealed by this act are in full force and effect; *State ex rel* v. *Buckley,* 60 O. S., 273, 297; *State ex rel* v. *Edmonson,* 89 O. S., 351; *Graves* v. *Janes,* 18 O. C. C. (N.S.), 488, 24 O. C. D., 470; *Whitney* v. *Gill,* 15 O. C. C., 648, 8 O. C. D., 450; *State* v. *Monheim,* 14 O. D., 474.

In the case of *State ex rel* v. *Edmonson,* 89 O. S., 351, the third paragraph of the syllabus states the law as follows:

"Where an unconstitutional statute contains a clause repealing a prior valid law, for which the later statute was a substitute. the repealing clause will also be held inoperative in the absence of an expressed intention to repeal the prior law without regard to the substitute."

The ditch law in question was clearly intended as a substitute for the former ditch law. The title of the act in substance so states. The repealing clause in this act comes within the rule of law as above stated by the Supreme Court.

The act of the Legislature passed April 29, 1921, entitled an Act to Amend Sections 6452, etc. relative to the improvement of

county ditches seems to recognize the fact that the former ditch law was unconstitutional. The act of 1921 in section 4 states that the same is declared to be an emergency law, for the reason that an opinion of the attorney general that the ditch code enacted in 1919 is unconstitutional has had the effect of holding up all pending and prospective ditch improvements. The former ditch laws were then in force. The act of April 29, 1921, does not cure, or attempt to cure, all the defects in the ditch law of 1919, as will hereafter be pointed out. The court finds that the ditch laws which were attempted to be repealed by the act of 1919 are in full force and effect; that the act of 1919 is not in force or effect in any of its ditch provisions; that the act passed April 29, 1921, can not be construed as an act giving force and effect to ditch proceedings under the law of 1919 pending at or after the passage of the act of 1921. We are not called upon in this case to determine contractual rights which might arise if the improvement had been constructed, the bonds sold, and the rights of innocent third persons had intervened; but so far as these four cases are concerned the court is of the opinion that a law which is unconstitutional, and the proceedings thereunder, can not be made constitutional by a subsequent act of the Legislature declaring the things done under the former law to be constitutional. If this were permitted any unconstitutional act of the Legislature could be made constitutional by the passage of a subsequent law declaring all acts under the former law constitutional. The acts attempted to be done, which were unwarranted by reason of the unconstitutional act of 1919, can not be made valid to the prejudice of the rights of interested parties, over their objection, by section 3 of the act of April 29, 1921, which is as follows:

"This act shall apply to proceedings now pending under 'An Act to codify, consolidate, and clarify the ditch laws of the state' appearing in 108 Ohio Laws, Part 1, at pages 926, and following. Boards of county commissioners and courts before whom such proceedings are pending are authorized to correct such proceedings to conform to this act, and when such proceedings are so corrected they shall be held and deemed to be valid in all respects, and any assessments made thereunder shall be valid, and any bonds issued thereunder shall be full and valid obligations of the county."

If the courts are bound to follow this ditch legislation of 1921, any unconstitutional act can be made constitutional by the passing of a subsequent act attempting to make it retroactive by making it apply to acts under the unconstitutional act. This court holds that section 3 of the act of April 29, 1921, does not authorize the court to correct any of the proceedings before the court to conform to such act.

The act of 1919 further provides in Section 6449:

"But where in the opinion of the county commissioners, or the court, the damage that will be sustained by any person by the construction of the improvement can not be readily ascertained until after the completion of the improvement, the hearing thereon may be postponed to a day not more than ninety days after the completion of the same."

In the case of *Cottrell* v. *Commissioners,* the improvement crosses the farm of the plaintiff and the pleadings in substance state that the commissioners expect to determine the damages by reason of the location and construction of the ditch within ninety days after the completion of the same. Section 6474 provides that any party may appeal from an order of the county commissioners to the common pleas court on the question of the determination of the compensation of property taken or damage to property. Section 6483 provides:

No appeal, nor any proceeding in error allowed or provided for the parties to an improvement proceeding under this chapter except an appeal from a final order granting a petition for an improvement, shall operate to suspend or defer any of the proceedings provided for the surveying and estimating the cost of any improvement, or the letting of the contract for and the construction of it, all of which shall proceed as if no appeal had been taken or error had been prosecuted."

By virtue of the provisions of Section 6499 and 6483 the ditch may be constructed across the plaintiff's land prior to the determination of the compensation and damages to be paid to the plaintiff for taking his land. Article 1 Section 19 of the Constitution provides that "where property shall be taken for public use, a compensation therefore shall first be made in money, or first secured by a deposit of money."

The sections of the ditch law aforesaid violate this provision of the Constitution and by reason thereof are unconstitutional. *Zimmerman* v. *Canfield*, 42 O. S., 463; *Ryan* v .*Cincinnati*, 1 O. C. D., 311; 1 O. C. C. 558.

In the case of *Zimmerman* v. *Canfield*, in the opinion on page 472 appears the following:

"The court dissolved the injunction theretofore granted and thus left the commissioners entirely at liberty to proceed (after the expiration of the sixty days for which proceedings were stayed) with the construction of the ditch across the plaintiff's land regardless, of whether his compensation should 'first be made in money, or first secured by a deposit of money' (as required by Section 19 of the bill of rights). In this there was error for which the judgment of the district court is reversed.

"Judgment will be entered enjoining all further proceedings until the ditch is legally established."

In the syllabus of the Zimmerman case the court states that this is the law in Ohio.

Section 6452 provides for the assessing on land drained the cost and expense of constructing the improvement including the cost of the proceedings; Section 6453 provides that, "compensation for property taken shall be assessed upon the benefitted property as in this chapter provided." Section 6469 provides:

"After the granting of the petition for any improvement under this chapter and the letting of contracts for work and material and the ascertainment and determination of all known claims for compensation for property taken, or damages to property from the construction of the improvement, the total cost thereof including the preliminary cost, and the actual or estimated cost of supervision and any known costs of litigation taxed against the county shall be assessed proportionally according to special benefits conferred."

Section 6479 provides for the determination of the compensation or damages by a jury, and further provides "In case such an amount differs from the award appealed from, the difference shall be prorated by addition or deduction from the assessments, if assessments have been made, upon the property assessed for such improvement." This act provides that the compensation

or damages for the land taken shall be assessed in part upon land claiming the compensation or damage, and is in violation of Article 1, Section 19 of the Constitution, which provides: "and such compensation shall be assessed by a jury without deduction for benefits to any property of the owner."

It is true that, in fixing the compensation and damages, the jury is directed (Section 6479) that it "shall not consider or deduct the value of any benefit that it will receive from the construction of such improvement." However, the same section provides that as soon as a jury determines the amount of the compensation, then the amount so determined shall be assessed back upon the land, a part of it upon the land claiming the compenation. The Constitution provides that compensation shall be paid in full and courts will not permit any round about method to defeat this direct provision of the Constitution, and this act is unconstitutional by reason of this provision. *Railroad Company* v. *Cincinnati,* 62 O. S., 465; *Dayton* v. *Bauman,* 66 O. S.. 379; *Rhoades* v. *Toledo,* 6 O. C. C., 9; 3 O. C. D., 325; *Giesy* v. *Railroad Company,* 4 O. S., 308; *Norwood* v. *Baker,* 172 U. S., 269.

The Supreme Court of Ohio has clearly stated the law in the second paragraph of the syllabus in the case of *Railroad Company* v. *Cincinnati,* 62 O. S., 465.

"Compensation paid to a land owner for lands taken by appropriation proceedings to open a street, can not be assessed back upon the lands of the owner remaining after such taking. Neither can the costs and expenses incurred in such proceeding be so assessed. *Cleveland* v. *Wick,* 18 Ohio St., 303, overruled."

Section 6469 provides that after the letting of the contracts and the ascertainment of all known claims for compensation or damages and the total cost thereof including "any known costs of litigation taxed against the county shall be assessed proportionally according to special benefits conferred."

Section 6480 relating to the taxing of the costs after a case is appealed provides that if the plaintiff wins on a question of compensation and damages, then the costs of the case are adjudged

against the county as follows: "If the plaintiffs prevail, then their costs shall be taxed against the county, and the county commissioners shall pay the same from the general ditch improvement fund, and add the same to the costs and expense of the improvement to be assessed upon all benefitted property." This section provides for the assessing upon lands the costs of litigation in which the land owners are not parties, and in which they have no control of the litigation. An assessment for costs is attempted to be made without any board or tribunal first finding that the costs so incurred were for the public welfare, or for the benefit of the parties required to pay the same. The section provides for the taking of private property to pay for litigation without any reference as to whether or not the litigation is for the benefit of the fund created for the ditch, or for the public welfare. If a party appeals the question of compensation, and gets a larger judgment in the court than was awarded by the commissioners, the costs are adjudged against the commissioners, and by these sections the costs so adjudged against the commissioners are assessed back on the land of the persons who obtained the judgment for compensation, and thereby reduce the compensation. These sections are unconstitutional for the reason that they violate that part of Article 1, Section 19, which provides that such compensation shall be assessed by a jury without deduction for benefits and further violate that provision of Article 1, Section 19, which provides that private property shall ever be held inviolate but subservient to the public welfare. There is no provision for any board or tribunal to find that the costs so incurred were for the public welfare. The taking of this money from the land owners by way of assessments to pay the costs in such litigation is contrary to the sections of the Constitution aforesaid.

In the case of *Dayton* v. *Bauman*, 66 O. S., 379, the law is stated in the first paragraph of the syllabus as follows:

"The limitation of Section 19 of Article 1 of the Constitution or Section 6 of Article 13 as to assessments, goes to the full extent of prohibiting the raising of money directly or indirectly by assessment to pay compensation, damages or costs for lands

appropriated by the public for public use. *Railway Co.* v. *Cincinnati*, 62 Ohio St., 465, approved and followed.''

Section 7444 provides that the petition for a ditch may be heard either by the board of county commissioners, or the common pleas court. In the one instance, the board of county commissioners, and in the other the court of common pleas, perform similar functions. Section 6474 provides for an appeal from the board of county commissioners to the court of common pleas and further provides that if ''the county commissioners of any county be a party, and the proceeding was commenced originally in the common pleas court, then any interested party may appeal from any final order or judgment of such common pleas court granting, refusing, or locating the improvement petitioned for, to the superintendent of public works as the drainage commissioner provided for in a subsequent section of this act.'' Sections 6475 and 6476 provide for the usual procedure to perfect the appeal. Section 6477 provides that the ''hearing of said appeal on the issue made shall be under the rules of law for civil cases; if the appeal be from a decision or order for or against the location or construction of an improvement, the same shall be heard by the court as a case in equity; if the appeal be from the court of common pleas to the drainage commissioner the same shall be heard and decided by said drainage commissioner or his official board of appeals, if he summon the same, as in this act provided, as are equity case in courts having such jurisdiction.'' Section 6481 provides that ''after the final judgment, decree or order upon an appeal is rendered by the appellate court, the clerk thereof shall within ten days make a transcript of the same, and certify and transmit it with all original papers in the case and the taxed bill of costs to the county auditor, or the court from which it came on appeal,'' and further provides that the common pleas court upon receiving the notice of such decree ''shall proceed with said improvement proceedings in compliance with such final judgment, decree or order.'' Section 6510 provides that the superintendent of public works of Ohio shall be the drainage commissioner. Section 6513 provides that the drainage commissioner shall hear and determine all appeals pro-

vided in this act to be made to him under its provisions.   Section 6514 provides that the drainage commissioner shall call to his assistance to form an official board of appeals, the state highway commissioner, and the dean of the engineering department of the Ohio State University.   Section 6525 provides that the appellate court, or as the section names it, the appeal board so created, ''shall have and exercise the jurisdiction given to the court of common pleas in case of appeals upon single county improvements.''

These sections in substance provided that a judgment, order or decree of the court of common pleas may be appealed to a new court created by the statute, composed of the superintendent of public works, the state highway commissioner, and the dean of the engineering department of the Ohio State University. The word ''appeal'' is repeatedly used.   This word in judicial proceedings is defined as the removal of a cause from an inferior court to one of superior jurisdiction for the purpose of obtaining a review or a retrial.   In its original and technical sense, it is a proceeding introduced into equity practice from the civil law by which the whole cause was removed from a lower to an appellate court, and there tried *de novo* upon the evidence newly introduced, being subject to a new and final determination as if it had not been tried before, and without any reference to the conclusion of the inferior court. 3 Corpus Juris, 341, 315; 1 Words and Phrases, 444; Black's Law Dictionary, 78.

In the case in which the original petition was filed by the board of county commissioners, this court either hears this matter judicially, or does not hear it at all.   The court either hears this matter as a judicial question, or the statute is unconstitutional in attempting to have the court hear questions which are not judicial.

In the case of *Zanesville* v. *Telegraph Company*, 64 O. S., 67, the first paragraph of the syllabus states the law as follows:

''The distribution of the powers of the state, by the Constitution, to the legislative, executive, and judicial departments, operates, by implication, as an inhibition against the imposition upon either of those powers which distinctly belong to one of the other departments.''

The courts of Ohio have repeatedly recognized that in locating ditches and roads the acts of the board of county commissioners, or of the board of township trustees are *quasi* judicial acts; that is, that the board in passing upon the questions in the first instance passes upon such questions as are appealable to a court of record. Laws have been enacted providing for appeals and for proceedings in error from the decisions of a board of commissioners or trustees in ditch and road matters. These statutes providing for appeal or error have been sustained on the theory that the question involved is a *quasi* judicial question.

The Supreme Court in many cases has held that this is a proper remedy. *Haff* v. *Fuller*, 45 O. S., 495; *Lewis* v. *Laylin*, 46 O. S., 663; *Atley* v. *Commissioners*, 77 O. S., 285; *Geddes* v. *Rice*, 24 O. S., 60.

This court is of the opinion that the power attempted to be conferred upon the court of common pleas by this act, in providing that a ditch petition may be filed in the common pleas court by the county commissioners, is a judicial power, that the matters which the court is called upon to determine are judicial acts, and that the judgment, order or decree provided for by this act is a judicial order, judgment, or decree. In the original petition filed by the board of county commissioners, this court hears this entire matter as a court. This act recognizes this fact by providing for proceedings in error, and by stating that the proceedings shall be as in civil cases, and that the court shall sit as a court of equity.

This act specifically confers upon the court of common pleas the power to hear and determine ditch matters. The fact that the Legislature confers upon the court of common pleas the power to hear the petition presented by the commissioners shows that the Legislature intended the court to hear this as a judicial act. In the case of *Zanesville* v. *Telegraph Company*, 64 O. S., 67, this rule is discussed in the second and third paragraphs of the syllabus as follows:

"The fact that a power is conferred by statute on a court of justice, to be exercised by it in the first instance in a proceeding instituted therein, is, itself, of controlling importance as fixing

the judicial character of the power, and is decisive in that respect unless it is reasonably certain that the power belongs exclusively to the legislative or executive department.

"The institution and prosecution in a court, comprehends the filing of a proper complaint, process for bringing in the proper parties, and a judicial inquiry according to established rules and practice."

It seems to be well settled in Ohio that an appeal can not be taken from the decision of a court to some other board or tribunal, but only to a higher court; that is, a court can only review the judgment, order or decree entered by the court of common pleas in ditch proceedings on petition by the county commissioners. This question is discussed in the case of *State* v. *Guilbert*, 56 O. S., 575. In the case of *Logan Branch Bank, ex parte,* 1 O. S., 433, in the opinion appears the following: "And as we have no idea of an appeal except from one court to another this proceeding must be dismissed." In the case of *Musser* v. *Adair*, 55 O. S., 466, in the opinion on page 472 Judge Minshall says:

"Judicial powers are those conferred on judges as courts in the hearing and determination of questions arising in litigation between parties in actions pending before them. Ex parte actions are only a seeming exception to this rule. In short, judicial power is the power exercised by courts in hearing and determining cases before them, or some matter incidental thereto, and of which they have jurisdiction."

An appeal from the common pleas court can not be taken to the superintendent of public works by any statute; an appeal can be taken only to a higher court. The Legislature can not create such an appeal. This court finds that the sections of this ditch law which attempt to confer the right to appeal to the superintendent of public works, or to the board of appeals, composed of the superintendent, the state highway commissioner, and the dean of the engineering department of the Ohio State University, are unconstitutional for the reason that these sections attempt to create a court not provided for by the Constitution, and attempt to confer judicial power upon a court of appeals not provided for by the Constitution, and are contrary

to the provisions of the Constitution relating to judges and courts. Article 4, Section 1, of the Constitution vests the judicial power of the state in the courts. Article 4, Section 10, provides that the judges shall be elected. The superintendent of public works, and the state highway commissioner are ministerial officers, and the dean of the engineering department of the Ohio State University is not an officer of the state. The attempt to confer judicial powers upon administrative officers is discussed in the case of *State* v. *Guilbert*, 56 O. S., 575. The third paragraph of the syllabus is as follows:

"Said act is repugnant to Section 1, of Article 4, of the Constitution, because it attempts to confer judicial power upon the county recorder."

The granting to the court of common pleas the right to hear the ditch petition presented by the county commissioners grants to the court the right to hear and determine judicially the questions presented and to enter a judgment, order or decree. If the court does not hear this judicially, then the statute is unconstitutional being an attempt to confer on the judicial branch duties not properly belonging to it, contrary to the law as stated in the case of *Thompson* v. *Redington*, 92 O. S., 101; the second paragraph of the syllabus is as follows:

"In the absence of express constitutional provision therefor, the General Assembly of Ohio can not assign to the judicial branch of the government any duties other than those that are properly judicial, to be performed in a judicial manner."

Looking further into the ditch law as to the power attempted to be conferred upon the superintendent of public works, the state highway commissioner, and the dean of the engineering department of the Ohio State University, which the statute calls an official board of appeals (Section 6514), we find that the statute provides that this board of appeals (Section 6477) shall hear the same as equity cases are heard in the courts, and shall be governed (Section 6477) by the rules of law for civil cases; and that this board (Section 6525) shall have and exercise the juris-

diction given to the court of common pleas in case of appeal
upon single county ditches—all of which provisions are judicial
and all the functions performed by the official board of appeals
are judicial and contrary to the Constitution.

Looking further into the act attempting to confer power upon
this official board of appeals or the superintendent of public
works, Section 6521 provides that in joint county ditches if the
two boards of commissioners can not agree as to the amount to
be paid by the upper county and the lower county, then that the
matter is certified to the superintendent of public works, and
further provides that he shall determine the amount to be paid
by the upper county, and the amount to be paid by the lower
county, and further provides that he shall "make such apportion-
ment and he deems just and equitable between the counties af-
fected, which apportionment shall be final;" section 6522 then
provides that the amount which he determines shall be assessed
upon the lands benefitted in each of the counties; that is, the
statute attempts to place upon the superintendent of public
works the power finally to decide the amount to be paid by the
upper county and the amount to be paid by the lower county.
The question of benefits and the amount thereof are questions of
fact. The Legislature by law can not make or change a fact.
The taking of money to pay the assessment according to bene-
fits is the taking of private property for the public welfare. It
can be taken only for special benefits; it can be taken only in the
proportion to the costs as the total benefits are to the total costs;
that is, the determining of the amount to be assessed upon any
particular tract of land, be it a town lot, a farm, or a township,
or a county, is the determining of a question of fact. Any in-
terested party has the right to have this determined by a court.
The Legislature can not take away this right. Any attempt
to place a final determination of this fact with the superintend-
ent of public works is in violation of the Fourteenth Amend-
ment to the Constitution of the United States, and of Article
1, Section 16, of the Constitution of Ohio, in that it deprives
the land owner, or the county, of its property without due pro-

cess of law. In the syllabus in the case of *Norwood* v. *Baker*, 172 U. S., 269, this rule is stated as follows:

"Due process of law requires compensation to be made or secured to the owner of private property when it is taken by a state, or under its authority, for public use.

"The exaction from the owner of private property, of the cost of a public improvement is substantial excess of the special benefits accruing to him, is, to the extent of such excess, a taking, under the guise of taxation, of private property for public use without compensation."

Any statute which attempts to take away from the courts and vest in some administrative officer the right finally to determine the amount of the benefits and the amount to be assessed without giving an opportunity for a court to hear this, is unconstitutional. *Commissioners* v. *Commissioners*, 93 O. S., 37.

Section 6444 provides for the filing of a petition by the county commissioners in the common pleas court asking for the location of the ditch. Section 6469 provides for the engineer's report on the assessment according to benefits. Section 6471 provides that this schedule of assessments shall be filed with the county auditor, and that the auditor shall given notice by publication so that perons who may desire to object may file exceptions. This applies to the ditch petition filed before the board of county commissioners and also to the ditch petition filed in the court of common pleas. Section 6472 provides:

"If any objections are filed, then at the first regular meeting of the commissioners following the expiration of time for filing objections, or at some later date, at such meeting fixed, the commissioners shall hear said objections, and all evidence offered by any interested party pertaining thereto and make such modification in the reported assessment as justice requires."

In the case of *In Re County Ditch Improvement* No. 345, in which the board of county commissioners filed a petition, if the petition be granted, then the assessment as estimated by the engineer, will remain on file in the office of the county auditor, notice will be given so that objections can be heard, and the land

owners who appear in this court will file objections to the report of the engineer; then by Section 6472 the objections to the assessment so made by the land owners are heard by the board of county commissioners. In other words, in one of the cases now before this court, this section of the ditch law provides that the plaintiffs, the petitioners for the ditch, shall sit as judges in their own case to hear objections by land owners to reduce the assessment on their land which would increase the assessment apportioned to the petitioner. This section of the statute makes the petitioners, the plaintiffs in case 7744, the judges in their own case when it comes to the question of determining the amount of the assessment which the land owner opposed to the ditch, and the petitioners for the ditch, the plaintiffs, are required to pay. This provision of the law is contrary to the Fourteenth Amendment to the Constitution of the United States and to Section 16, Article 1, of the Constitution of Ohio for the reason that it takes the property of the land owners to pay the assessment without due process of law in that it makes the petitioner the tribunal to determine the amount to be paid by other land owners.

In the matter of the ditch petitioned for by S. I. Dick, being the ditch appealed by Blinn Peck and others, the board of county commissioners of Williams county, is named as one of the defendants in the proceedings on appeal. This board is the tribunal that heard the controversy between the petitioner for the ditch and those opposed to the ditch, and passed upon the issue raised by the ditch petition. On appeal the controversy is still between the petitioner for the ditch and those opposed to the ditch. The court or tribunal that first hears a case is not a proper party in the next higher court to which the matter may be taken by appeal or error. The board of county commissioners being the tribunal that heard the case, is not a proper party in any proceeding authorized by appeal or error to review the findings of the board. If the board of county commissioners is a proper party in this court on appeal then in the proceedings below the board acted as judge in its own case. If the board of commissioners

are defendants on appeal, if this case is taken to a higher court, should this court be a defendant? Neither the courts, nor the Legislature, can confer upon a party to a controversy, or anyone interested therein, the power to act as judge in his own case. Judge Minshall in the case of *Musser* v. *Adair* comments on such an attempt as a novel proceeding, and states that the court rendering the judgment is not ordinarily made the defendant in a proceeding to review it. *Musser* v. *Adair*, 55 O. S., 466, on page 470; *Wood County* v. *Junkins*, 19 O. S., 348; *Jameson* v. *Cass County*, 56 Ind., 465; *Barr* v. *Stevens*, 1 Bibb. (Ky.) 292; *Gregory* v. *Cleveland*, 4 O. S., 675; *Conklin* v. *Squire*, 4 O. C. D., 493; *Cooley Const. Lim.*, 412; *Wright* v. *Wells*, 27 Ind., 65.

This question was raised in the matter of the appeal of Rickett's Ditch in the probate court of Williams county, being a township ditch appeal. A motion was filed to dismiss the board of trustees, which board was made a party defendant in the probate court. The probate court overruled the motion. On petition in error, Judge Killits, in the court of common pleas granted the motion, and dismissed the trustees. The circuit court of Williams county, at its May term, 1910, in the case of *Ricketts* v. *Gordon*, affirmed the judgment rendered by Judge Killits dismissing the board of trustees as defendants in the ditch appeal. The courts held that the board of trustees was not a proper party.

In the case of *Spealman* v. *Commissioners* the evidence shows that contracts have been let for the construction of three branches which branches are longer than the main ditch, and that there is no finding by the board of county commissioners that the branches or any of them are necessary and will be conducive to the public welfare, and no finding of any nature or kind whatsoever in favor of any of the branches, or determining their length, and no order by the board of county commissioners to the engineer to locate the branches and to make the engineer's reports for their construction and for the lands benefitted. All that appears is in the engineer's report. There being no finding by the commissioners for any of these branches, the proceedings attempted to be had by the commissioners and the engineer with

reference thereto, are void. The plaintiffs' land being assessed for the construction on these branches, no work having been done on any of them, the plaintiffs are entitled to a perpetual injunction enjoining any work in this proceeding on said branches. The letting of contracts for the branches is without authority of law.

In the case of *Spealman* v. *Commissioners,* the evidence shows that one of the branches is located where no ditch has heretofore been located or constructed, that is, branch two is a new location and a proposed new construction of a ditch. The ditch petition filed in this case is a petition for the cleaning, and deepening, if necessary, of a ditch, describing the main ditch. This is a petition praying for the cleaning and deepening of a ditch. An attempt is made to locate a new ditch where branch two is proposed to be constructed. No petition was filed praying for the location of a new ditch. No finding was made by any board that the location of this new ditch was necessary or would be conducive to the public welfare. No order was made by the board of commissioners to locate this new ditch, and as the lands of the plaintiffs' are assessed for a part of the construction of this branch, the plaintiffs are entitled to a perpetual injunction enjoining any further acts in this ditch proceeding with reference to branch two for the reason that no petition was ever filed praying for the location of any ditch in this proceeding, and that the commissioners were without authority to locate a branch ditch upon a petition filed for the deepening of a ditch, which had theretofore been located by the county commissioners.

In the case of *Spealman* v. *Commissioners,* the evidence shows that the contracts for the construction of the proposed ditch and the branches were let for $296.33 less than the estimate; that the assessments were made up from the estimate, and that the $296.33 was not deducted therefrom prior to the levying of the assessments, and that the assessments as levied included therein the $296.33, being that much more than the cost of the proposed improvement, and a part of this is levied upon the lands of the plaintiffs. The court finds that the engineer in spreading the

assessments, and the commissioners in confirming the assessments were without right or authority in placing therein the $296.33, and that the plaintiffs are entitled to an injunction against the assessments as levied by reason thereof. The court does not attempt to correct any assessment for the reason that the court finds the entire proceedings void as heretofore stated.

It is urged that the ditch petition in two of these cases is a petition for the cleaning and repeairing of a ditch, as well as a petition for the deepening of a ditch, and that by reason thereof proceedings should be had to clean out and repair the ditch; and that even though the statute may be unconstitutional as to the location and deepening of a ditch, it is not unconstitutional in its provision for the cleaning of a ditch. Section 6505 provides that in case of cleaning or repairing a ditch certain proceedings are had, and Section 6508 provides for the levying of assessments for cleaning the ditch. The evidence in these cases shows that the ditches are in fact deepened, and shows that the proposed assessments are not estimated according to Section 6508. If the facts in any one of these cases should show that the petition is merely to clean out the ditch, then Section 6508 provides that the assessments for cleaning out the ditch shall be charged to the lands originally assessed for the construction of the ditch in the ratio of such assessment. The evidence shows that two or three ditch proceedings have heretofore been had on the ditch in the Peck case and also in the Spealman case, and also on the ditch in the case petitioned for by the county commissioners. If effect is given to that part of the ditch petition praying for a clean cut, then the next question arises as to the levying of the assessments. Assuming that the petition is a petition for the cleaning of a ditch, and no more, then the question arises as to whether the assessments should be levied in the ratio of the assessments when the ditch was located, or in the ratio of the assessments when the ditch was deepened the first time, or in the ratio of the assessmens when the ditch was deepened the second time, or how the assessments should be levied.

In the construction of ditches frequently land owners, in order to avoid the cost of cleaning out the ditches and the filling up of ditches by live stock walking therein, place large tile in the outlet ditches, the cost of the original construction of the ditch being thereby much increased. If the assessments for the clean out are to follow the provisions of Section 6508 and the ditch is part tile and part open ditch, as appears in some of the cases before the court, then the man who paid a large assessment because the tile are on his farm, will be required to pay more for cleaning the open ditch than the man who pays a lesser assessment through whose land the open ditch is constructed. The provision of Section 6508, providing for the levying of assessments for the clean out in the ratio of the assessments for the original ditch, does not take into consideration the benefits conferred by the clean out, and does not take into consideration the causes which require the clean out. It is well known that one farm owner may keep his ditch reasonably clean so that but little sediment deposits in it, and that another farm owner may allow his ditch to become filled by live stock walking therein, or weeds growing therein. There are many other things entering into the question of assessing according to the benefits in cleaning a ditch. As stated in the case of *Norwood* v. *Baker,* 172 U. S., 269, assessments must be according to benefits, otherwise the assessment is void. The Supreme Court of Ohio has repeatedly so held. In the case of *Walsh* v. *Barron,* 61 O. S., 15, in the first paragraph of the syllabus, this is declared to be the law in the following language:

"The fundamental principle underlying an assessment made on property for the cost and expense of a local public improvement is that the property is specially benefited by the improvement beyond the benefits common to the public, and that a ratable assessment of the property to the extent of these benefits violates no constitutional right of the owner, and is just and proper. But it can in no case exceed the benefits without impairing the inviolability of private property."

Section 6508 in so far as its attempts to convey authority to levy assessments in a clean out in the ratio of the original assess-

ment, without reference to the special benefits conferred, is unconstitutional and in violation of Article 1, Section 19, of the Constitution of Ohio, and Section 14 of the amendments to the Constitution of the United States.

The evidence in the case *In Re Ditch Improvement No.* 345 shows that a public highway crosses a marsh and that the deepening of the ditch for the outlet of this marsh is necessary in order to drain the public highway, and also in order to drain the marsh on the farms of several of the land owners who appear in the case. The engineers report of the benefits and the lands proposed to be assessed shows that the cost of deepening this ditch to drain the marsh is proposed to be assessed on the highland, which the evidence shows now has adequate outlet for drainage. In the case of *Peck* v. *Commissioners,* the evidence shows that the ditch from the lower terminus going up stream is through a ravine for some distance, and then that it drains a marsh on several farms. A highway crosses the marsh. The evidence shows that the lands of all of the plaintiffs, except two, lie higher than the ditch where the work is proposed to be done. The evidence shows that the country is somewhat rolling, rising thirty to fifty feet above the ditch. The engineer who spread the assessments, and the commissioners who approved the same, admit that the assessments were levied in zones, at a certain rate per acre, that is, a zone near the ditch was assessed at a certain rate per acre, and the zone next back from the ditch, at a lesser rate, and so on farther back to the last zone which is at the extreme outer limits of the watershed. The evidence shows that the higher lands, which have adequate outlet, and the drainage of which will in no way be benefitted by the proposed improvement, are assessed for the construction thereof. In the case of *Spealman* v. *Commissioners,* the petition avers that the assessments were levied upon the entire acreage within the watershed. The evidence shows that many acres of the highland which have adequate drainage and which will not be benefitted by the proposed improvement were assessed; that all of the land in the watershed was assessed.

This court may not now be called upon to determine whether

or not the question of assessments is before it in the Peck case, or in the original ditch proceedings filed by the commissioners. The act in providing for the appeal states that the court of common pleas on appeal shall hear the matter as a court of equity. If the court hears the appeal as a court of equity, then the question arises as to whether or not the court sitting as a court of equity will draw the entire case to it in order that the entire matter in controversy may be decided. If the rules of equity are applied, this is the logical result; but the statute seems to provide three appeals. In the Peck case the assessments may not be before the court. However, in the Spealman case the assessments are clearly before the court, and this court finds that the assessments levied in the Spealman case, and assessments proposed to be levied in the Peck case as shown by the engineer's report, and the assessments proposed to be levied in the original proceedings in this court by the county commissioners as shown by the engineer's report, are not according to benefits, for the reason that they are assessed upon the entire watershed without reference to whether or not the tracts need drainage. They are assessed upon the theory that the water reaches the ditch where it is to be improved and by reason thereof the land should pay, without regard to the question as to whether or not the uplands need any additional ditch for their drainage.

The court finds that the only lands benefitted are the lowlands and marshes which will actually be better drained by the proposed improvements; and that land which has adequate drainage and does not need any work done on the present ditch to furnish an outlet for its drainage can not be lawfully assessed for the work done on these ditches. The highlands can not be called upon to drain the lowlands, even though the water from the highlands may flow away more rapidly in ditch or streams and cause the water to overflow the lowlands. The owner of a higher farm may drain it by ditches that are necessary, and he may make whatever drainage is necessary for good husbandry, either open or covered, and may discharge the water therefrom into the streams, channels, or ditches constructed therein, onto the lower land, and if his land is high enough above

the lower land and so that no ditch is needed to drain it, he can not be assessed for the drainage of the lower land even though the water from the upland may flow in the ditch.

Blue v. Wentz, 54 O. S., 247; Butler v. Peck, 16 O. S., 334; Mason v. Commissioners, 80 O. S., 151; Shanks v. Commissioners, 82 O. S., 508; Commissioners v. Commissioners, 93 O. S. 37; Buckley v. Commissioners, 1. O. C. C., 251; Peck v. Watros, 30 O. S., 590; Thayer v. Brooks, 17 O., 489, 494.

The assessments levied in the Spealman case, and the assessments proposed to be levied in the Peck case, and in the case of In Re Ditch Improvement No. 345 are all levied, or proposed to be levied, contrary to Article 1, Section 19, of the Constitution. Land on the upper part of the watershed of each of these ditches is not benefitted. The land has sufficient drainage outlet before the water reaches that part of the ditch on which work is proposed to be done. If a ditch of sufficient depth to drain the upper farm, and with sufficient fall, has an outlet before reaching the proposed improvement, then the upper farm can not lawfully be required to pay an assessment for constructing the improvement, even though the water from the upper farm flows into the improvement thereby making it necessary to construct a larger ditch to carry the water away from the lowland. Mason v. Commissioners, 80 O. S., 151; Hughes v. Anderson, 68 Ala., 280, 44 Am. Rep., 147; Blue v. Wentz, 54 O. S., 247; Peck v. Harrington, 109 Ill., 611, 50 Am. Rep., 627; Mizel v. McGowan, 129 N. C., 93; Obe v. Pattot, 130 N. W., 903 (Ia.); Aldritt v. Fleischauer, 74 Neb., 66; Arthur v. Glover, 118 N. W., 111.

The outer limit of benefits to land to be assessed for the construction of a ditch is the irregular line connecting the points back from the ditch which have sufficient elevation above the high water in the ditch, before the improvement, so that a profile of a ditch from that point would have a sufficient gradient for the flow of the water from that point to the high water level of the ditch where that drainage enters the ditch. Land above that point can not be lawfully assessed for a ditch. Land below that point may be assessed inversely to its elevation. To state this concretely: tile should be covered approximately two feet,

a small ditch should have a gradient of about eight hundredths of a foot to the hundred feet; if a ditch can be dug from the lower side of any of the farms in these cases, so that the tile could be covered two feet, or the open ditch would be about three feet deep, where the ditch leaves the farm and so that a gradient of eight hundredths of a foot to the hundred feet from that point to the improvement would be above the high water mark where the water from the farm enters the improvement, then the work on the improvement will not benefit the farm for the reason that the water in the ditch, or the shallowness of the ditch, does not retard the flow of the water from the farm, and any work done on the ditch will not accelerate the flow of the water from the farm. If the profile on that gradient of the drainage from the upper farm, where the farm drainage enters the ditch, is below the bottom of the outlet ditch, then the outlet ditch must be deepened in order to furnish an outlet for the drainage for the upper farm and the farm is benefitted; if the profile on that gradient from the upper farm reaches the outlet ditch, where the farm drainage enters the ditch, above the bottom of the ditch and below high water in the ditch then the water in the outlet ditch retards the flow of the water from the farm back to the point where the plane of the surface of the high water intersects the bottom of a ditch deep enough to drain the farm, and no farther, and the land back to that point is benefitted by any improvement that takes the water out the ditch faster, and is benefitted inversely to its elevation; that is, the land from which the water is retarded by low or medium water in the outlet ditch is benefitted much more than the land from which the water is retarded only by high water in the outlet ditch. The land just back of the point where the surface or plane of high water intersects the bottom of a lateral ditch needs some fall to drain it at the time of high water, that is, if the water should remain at that high level, then there must be fall from the land to that high level.

The outer limit of benefits is where the profile of a ditch or plane with adequate fall (a gradient of about eight hundredths) going up from the surface of usual high waters, before the im-

provement is constructed, intersects the bottom of a ditch deep enough (about three feet) to drain the land adjacent thereto; and all land that lies above this point or irregular line on the surface of the land is not benefited and can not be lawfully assessed. This rule of determining the outer limit of benefits was used by the engineer in the Mason case, and the acts of the engineer were approved by the court of appeals of Fulton county, to which the case of *Mason* v. *Commissioners,* 80 O. S., 151, was remanded, as shown by the record of the case in that court. This rule was used in the case of *Blacker* v. *Commissioners of Defiance county,* as shown by the complete record of the case in the court of common pleas, but which case is not reported; and has been used in a number of other cases in different counties in northwestern Ohio.

The court finds that in the three cases aforesaid in Williams county the assessments are erroneously attempted to be determined by the engineers, and by the commissioners, but that by reason of the finding that the law is unconstitutional the court does not attempt to correct said assessments; that all of the ditch laws in the act found in Ohio Laws Volume, 108, part 1, page 926 *et seq,* are unconstitutional, that the repealing part of said act is a nullity, and that all of the ditch laws attempted to be repealed thereby are in full force. In the case of *Cottrell* v. *Commissioners,* the demurrer to the answer is sustained, defendants not caring to plead the case further, final judgment is entered for the plaintiff; in the case of *Spealman* v. *Commissioners,* the decree is for the plaintiffs, the defendants are enjoined from collecting any assessments from the plaintiffs, and from contructing any part of the improvement on plaintiffs' land; in the Matter of *Ditch No.* 345, petitioned for by the county commissioners, the petition is dismissed; in the case of *Peck* v. *Commissioners,* the ditch petition is dismissed, and all proceedings had thereon are set aside.